

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

CORY MAC A'GHOBHAINN,

        Plaintiff,

   v.

CITY OF LOS ANGELES, et al.,

        Defendants.

Case No. 2:23-cv-07613-SP

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR JUDGMENT ON THE PLEADINGS**

## I.

## <u>INTRODUCTION</u>

On July 10, 2023, plaintiff Cory Mac A'Ghobhainn filed a complaint in Los Angeles County Superior Court against defendants City of Los Angeles and Los Angeles Police Department ("LAPD") Officer Karen A. Cruz and Sergeant Alexander Kim. Plaintiff alleges defendants violated her rights to protest using amplified sound and freely move and assemble. Defendants removed the action to this court on September 13, 2023.

Plaintiff asserts seven causes of action, claiming violations of: (1) California Civil Code § 52.1 ("Bane Act"); (2) California Civil Code § 51.7 ("Ralph Act"); (3) Welfare & Institutions Code § 15610.63 (abuse of elder person); (4) California Code of Civil

Procedure § 526a (waste of public funds); (5) the California Constitution's rights of liberty of speech and assembly, due process, and equal protection; (6) freedom of speech and assembly and viewpoint discrimination under the First Amendment and freedom of movement under the Fourteenth Amendment of the United States Constitution brought under 42 U.S.C. § 1983; and (7) declaratory relief.  Plaintiff prays for declaratory and injunctive relief, damages and penalties, and attorney's fees.

On July 15, 2024, defendants filed a motion for judgment on the pleadings and a request for judicial notice.  Plaintiff opposed the motion on July 23, 2024.  Defendants filed a reply on July 30, 2024.  The court held a hearing on the motion on August 27, 2024.

For the reasons that follow, the court grants in part and denies in part defendants' motion for judgment on the pleadings.

## II.

## ALLEGATIONS OF THE COMPLAINT

On October 3, 2022, plaintiff participated in a protest of a "controversial animal killing event" that involves swinging chickens around in the air and discarding them in order to "visualize what death is."[1]  At all times, plaintiff was on public property.

Defendant Cruz and other LAPD officers ordered plaintiff and the other protestors not to chant or use amplified sound, and threatened them with arrest if they did.  Cruz also threatened plaintiff with arrest if she entered a public alleyway.

Plaintiff asked to speak with Cruz's sergeant, defendant Kim.  Kim also threatened to place plaintiff under arrest if she used amplified sound.  Kim claimed the arrest would be based on a private person's arrest by the organizers of the event, and the arrest would not be a cite and release.

---

[1]     In her opposition to the instant motion, plaintiff identifies the event as Kapparot, a symbolic ritual practiced by some Orthodox Jewish communities.  Opp. at 13-14.

1   Due to defendants' threats, plaintiff and the other protestors did not use amplified
2   sound even though such speech was protected by the First Amendment and not prohibited
3   by any statute.  Meanwhile, the event organizer blared loud music from the strip mall
4   parking lot where the event was held.

### III.

### **STANDARD OF REVIEW**

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is a "means to challenge the sufficiency of the complaint after an answer has been filed." *New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1115 (C.D. Cal. 2004).  It is "functionally identical" to a Rule 12(b) motion to dismiss for failure to state a claim, differing only in that it is filed after pleadings are closed.  *See Dworkin v. Hustler Magazine, Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989); Fed. R. Civ. P. 12(c).

In evaluating a motion for judgment on the pleadings, all material allegations in the complaint are accepted as true and construed in the light most favorable to the non-moving party.  *See Turner v. Cook*, 362 F.3d 1219, 1225 (9th Cir. 2004) (citation omitted).  "Judgment on the pleadings is limited to material included in the pleadings" and the court may not consider extrinsic evidence.  *Yakima Valley Mem'l Hosp. v. Wash. State Dep't of Health*, 654 F.3d 919, 925 n.6 (9th Cir. 2011); *see Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir.1990) ("[J]udgment on the pleadings is improper when the district court goes beyond the pleadings to resolve an issue; such a proceeding must properly be treated as a motion for summary judgment.").

 "A dismissal on the pleadings for failure to state a claim is proper only if 'the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law.'"  *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir. 1988) (quoting *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984)); *see Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.

## DISCUSSION

As an initial matter, in their motion defendants generally argue that any claims plaintiff previously litigated are barred by collateral estoppel or res judicata, but they do not actually point to any particular claim they contend is precluded.  Plaintiff argues there are differences between this case and the earlier cases defendants cite.  Although there are many commonalities with the prior cases, at a minimum the court finds defendants have not sufficiently demonstrated that the issues litigated in the prior cases are identical for any claim.  *See Gospel Missions of America v. City of Los Angeles*, 328 F.3d 548, 553 (9th Cir. 2003) (for issue preclusion to bar relitigation the issues must be identical, actually litigated, and necessarily decided) (citations omitted); *Ludido v. Superior Court*, 51 Cal. 3d 335, 341, 272 Cal. Rptr. 767, 795 P.2d 1223 (1990) (same) (citations omitted).  As such, though the court has considered the cases defendants cite, defendants have not shown any of these cases precludes any of plaintiff's claims.

**A.**    **Request for Judicial Notice and Additional Exhibits**

In support of their motion, defendants request the court take judicial notice of: (1) Superior Court docket for *Animal Protection and Rescue League v. City of Los Angeles, et al.*, case no. 19STCV24522; (2) December 13, 2021 Court of Appeal decision in case no. B304781 (Superior Court case no. 19STCV24522); (3) Court of Appeal docket for *Lisa Karlan, et al. v. City of Los Angeles*, case no. B315168 (Superior Court case no. B3174454); (4) November 27, 2023 Court of Appeal opinion in case no. B315168; and (5) LAPD Directive No. 11.2.  Docket no. 23.  Both parties also submit declarations and exhibits.  Defendants submit the declaration of Surekha A. Shepherd in support of the motion and exhibits (docket no. 22-1), and in support of her opposition plaintiff submits the declaration of Bryan Pease and exhibits (docket no. 24-1).

On a motion for judgment on the pleadings, the court is limited to the pleadings except it may "take judicial notice of court filings and other matters of public records." *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir.

2006); *see Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001) (a court may take judicial notice of matters of public record); *U.S. ex. rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (courts may take judicial notice of proceedings in other courts if the proceedings have a direct relation to the matters at issue). "But a court cannot take judicial notice of disputed facts contained in such public records." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

Plaintiff does not object to any of the exhibits except for LAPD Directive No. 11.2. Although plaintiff does not expressly object to defendant's request for judicial notice, she argues LAPD Directive No. 11.2 is inadmissible hearsay, not properly disclosed, and irrelevant. Opp. at 11. Because all of the exhibits attached to defendants' request for judicial notice are matters of public record, the court will take judicial notice of the authenticity and existence of them. With regard to the orders and opinions, the court may not take judicial notice of them "'for the truth of the facts recited therein.'" *Lee*, 250 F.3d at 690 (citation omitted).

As for the Shepherd and Pease declarations, the court will not consider them or any of their exhibits except to the extent the court may take judicial notice of any public records or opinions.

**B.**    **Freedom of Speech and Assembly – California Constitution (Claim Five) and First Amendment (Claim Six)**

In Claims Five and Six, plaintiff alleges defendants violated her freedom of speech and assembly under the California and U.S. Constitutions when they threatened to arrest her for using a sound amplifying device. Claim Six, brought under 42 U.S.C. § 1983, is asserted only against individual defendants Cruz and Kim in their individual capacities.

The First Amendment prohibits the government from abridging the freedom of speech or to peaceably assemble. U.S. Const. amend. I; *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1020-21 (9th Cir. 2009). This extends to expressive activities such as protests. *U.S. v. Grace*, 461 U.S. 171, 176, 103 S. Ct. 1702,

75 L. Ed 2d 736 (1983).  To state a First Amendment claim, a plaintiff must allege that government action deterred or chilled plaintiff's speech and such deterrence was a motivating or substantial factor in defendant's conduct.  *Mendocino Env't Ctr. v. Mendocino Cnty.*, 192 F.3d 1283, 1300 (9th Cir. 1999).

"The protections afforded by the First Amendment are nowhere stronger than" in the public forum.  *Berger v. City of Seattle*, 569 F.3d 1029, 1036-37 (9th Cir. 2009).  Nevertheless, the protections are not limitless.  "Municipalities may impose reasonable restrictions on the time, place or manner of protected speech, provided the restrictions are: (1) content-neutral; (2) narrowly tailored to serve a significant government interest; and (3) leave open ample alternative channels for communication of the information."  *Colacurcio v. City of Kent*, 163 F.3d 545, 551 (9th Cir. 1998)

The liberty of speech clause of the California Constitution provides "Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of that right.  A law may not restrain or abridge liberty of speech or press."  Cal. Const., art. I, § 2.  Courts have found that this clause is broader and more protective than the freedom of speech provision in the First Amendment of the federal Constitution.  *Int'l Soc. for Krishna Consciousness of Cal., Inc. v. City of Los Angeles*, 530 F.3d 768, 774 (9th Cir. 2008); *Los Angeles Alliance For Survival v. City of Los Angeles*, 22 Cal. 4th 352, 365-66, 93 Cal. Rptr. 2d 1, 993 P. 2d 334 (2000).  While the First Amendment's freedom of speech protection "applies with greatest force in a traditional public forum such as a public sidewalk," the liberty of speech clause "provides such protection to any public speech that is not 'basically incompatible with the normal activity of a particular place at a particular time.'"  *Cuviello v. City of Vallejo*, 944 F.3d 816, 826 (9th Cir. 2019) (citation omitted); *see Prigmore v. City of Redding*, 211 Cal. App. 4th 1322, 1336, 150 Cal. Rptr. 3d 647 (2012) (citing the fact that the California Constitution protects the right to free speech in a shopping mall while the federal Constitution does not as an example of the broader protection).

Despite the broader protection, this does not mean the California Constitution is broader in all its applications. *Edelstein v. City and Cnty. of San Francisco*, 29 Cal. 4th 164, 168, 126 Cal. Rptr. 2d 727, 56 P. 3d 1029 (2002); *Los Angeles Alliance*, 22 Cal. 4th at 367. California courts have applied the same reasonable time, place, and manner analysis to restrictions on speech as the federal courts. *Cuviello*, 944 F.3d at 827; *Prigmore*, 211 Cal. App. 4th at 1336.

Both the United States and California Constitutions protect sound-amplifying devices as "indispensable instruments" of public speech. *Cuviello*, 944 F.3d at 825 (citing *Saia v. People of State of New York*, 334 U.S. 558, 561, 68 S. Ct. 148, 92 L. Ed. 1574 (1948) and *Wollam v. City of Palm Springs*, 59 Cal. 2d 276, 29 Cal. Rptr. 1, 379 P. 2d 481 (1963)). A restriction on volume can effectively operate as a restriction on speech. *Id.* Nevertheless, as discussed above, a municipality may "impose reasonable content neutral restrictions on the time, place, and manner of protected speech taking place in public forums," including regulating sound-amplifying devices. *Davis v. Los Angeles Police Captain Paul Vernon*, 2018 WL 11314966, at *2 (C.D. Cal. Apr. 19, 2018).

Taking the allegations as true, plaintiff was engaging in protected speech in a public forum – the sidewalk – when defendants threatened to arrest her if she used amplified sound. The threat of arrest chilled her speech: plaintiff then did not use amplified sound because of the threat. The question then is whether defendants were enforcing a reasonable restriction on the time, place or manner of protected speech in a public forum.

Defendants contend they did not violate plaintiff's freedom of speech when they ordered plaintiff not to use amplified sound because they were enforcing Los Angeles Municipal Code (L.A.M.C.) § 41.57, a noise ordinance that prohibits loud or raucous noise from any sound making or sound amplifying device upon, among other places, a public alley or sidewalk. L.A.M.C. § 41.57(a)(2). The ordinance defines "loud and raucous noise" as "any sound or any recording thereof when amplified or increased by

any electrical, mechanical, or other device to such volume, intensity or carrying power as to unreasonably interfere with the peace and quiet of other persons within or upon any one or more of such places or areas, or as to unreasonably annoy, disturb, impair or endanger the comfort, repose, health, or safety of other persons within or upon any one or more of such places or areas." L.A.M.C. § 41.75(b). Defendants state that people "seeking to use amplified sound that might exceed volume levels prohibited under" this ordinance may apply for a permit under L.A.M.C. § 103.11. Mtn. at 20. Defendants also contend police officers may "inquire about unacceptably loud noise, issue citations and/or arrest a speaker if the officers have probable cause under Cal. Penal Code § 415(2) that a user of sound amplification intends to "maliciously and willfully" create "loud and unreasonable noise." *Id.* at 21 (citing *Rosenbaum v. City and Cnty. of San Francisco*, 484 F.3d 1142, 1148 (9th Cir. 2007).

The Complaint contains limited factual allegations and no allegations regarding plaintiff's noise level, whether the event organizers or others had complained about plaintiff's noise level, or whether defendants informed plaintiff of the bases for the sound amplification restrictions. These are matters that might have been developed in discovery and presented in a motion for summary judgment, but none was filed. The court is here limited to the Complaint's allegations. Based on the limited factual allegations, the court cannot determine as a matter of law whether defendants' enforcement of L.A.M.C. § 41.75(b) violated plaintiff's freedom of speech.[2]

Thus, plaintiff has adequately stated a claim for violations of her liberty of speech under the California Constitution (claim five) and freedom of speech under the First Amendment (claim six). But defendants argue immunities nonetheless bar these claims against them.

---

[2]     Defendants state L.A.M.C. § 41.75(b) is "one such ordinance" they were enforcing when restricting plaintiff's use of sound amplification. Mtn. at 19. If there were other ordinances being enforced, such as L.A.M.C. § 115.02, defendants should identify all of them.

### 1.    Qualified Immunity

Defendants contend that even assuming plaintiff adequately alleged a constitutional violation, they are entitled to quality immunity from Claim Six, the § 1983 claim.  The court agrees.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986).

When determining if a defendant is entitled to qualified immunity, the court must conduct a two-step test as pronounced by the Supreme Court in *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001), overruled in part on other grounds by *Pearson*, 555 U.S. at 236.  The prongs may be analyzed in the order selected by the court.  *Pearson*, 555 U.S. at 236.  To survive a claim of qualified immunity, a plaintiff must show that the official's actions violated a constitutional right, and that the right was "clearly established" at the time of the conduct at issue.  *Nelson v. City of Davis*, 685 F.3d 867, 875 (9th Cir. 2012).  If the official's actions did not violate a constitutional right, there is no constitutional violation and qualified immunity is not implicated.  *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012).  If the official violates a constitutional right, but that right was not "clearly established," then the official is protected by qualified immunity.  *Id.*  "Only when an officer's conduct violates a clearly established constitutional right – when the officer should have known he was violating the Constitution – does he forfeit qualified immunity."  *Id.*  "A right is clearly established if it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *Id.* (quotation marks and citation omitted).  Thus, if an official "reasonably but mistakenly believed that his or her conduct did not violate a clearly

established right," he or she is entitled qualified immunity.  *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001).

It is clearly established that the freedom of speech includes using sound amplifying devices.  But it is also clearly established that municipalities are permitted to implement reasonable restriction on sound amplification.  "[A]n officer who acts in reliance on a duly-enacted statute or ordinance is ordinarily entitled to qualified immunity."  *Grossman v. City of Portland*, 33 F.3d 1200, 1209 (9th Cir. 1994) ("the existence of a statute or ordinance authorizing particular conduct is a factor which militates in favor of the conclusion that a reasonable official would find that conduct constitutional").  This is not absolute, however, and "[w]here a statute authorizes official conduct which is patently violative of fundamental constitutional principles, an officer who enforces that statute is not entitled to qualified immunity."  *Id.*  "Similarly, an officer who unlawfully enforces an ordinance in a particularly egregious manner, or in a manner which a reasonable officer would recognize exceeds the bounds of the ordinance, will not be entitled to immunity ...."  *Id.* at 1210.

Here, defendants assert they were enforcing an ordinance, and plaintiff maintains she is not challenging the ordinance.[3]  Thus, the court does not understand plaintiff to argue the ordinance patently violates the Constitution.  But plaintiff may be arguing that defendants' conduct exceeded the bounds of the ordinance.  As discussed above, the court is here limited to the allegations in the Complaint, which are silent as to just how loud plaintiff's sound amplifying device was.  Nonetheless, the Complaint alleges plaintiff was protesting an event and wished to use amplified sound but was dissuaded from doing so by defendants' threats of arrest.  It may be fairly inferred from these

---

[3]    Plaintiff asserts defendants make a straw man argument that she is making a facial challenge to the ordinances in this Complaint, which she is not.  Opp. at 15.  Instead, plaintiff argues she is making an as-applied challenge based on defendants' actions, which were in effect content-based restrictions and not reasonable in time, place, and manner.  Opp. at 6, 15, 17.  But if defendants' actions were in enforcement of the ordinance, then plaintiff is in effect challenging the ordinance.

allegations that defendants stopped plaintiff from using a sound amplification device that may have caused plaintiff's protest to interfere with or annoy those attending the event. As such, even without detailed allegations, the facts alleged in the Complaint are sufficient to establish that defendants had a reasonable basis to believe the ordinance applied and they were entitled to enforce it against plaintiff. Because defendants were reasonably acting in reliance on a valid ordinance, they are entitled to qualified immunity.

### 2. **State Immunity**

At the hearing, defendants argued that even if there was a violation of the California Constitution, Claim Five is barred by discretionary immunity.

Section 820.2 of the California Government Code states, "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2. "[T]he California Supreme Court has defined discretionary decisions are those that involve policy-making at a 'quasi-legislative' level, while ministerial decisions encompass those that 'merely implement a basic policy already formed.'" *Cuviello v. City of Stockton*, 2009 WL 9156144, at *18 (E.D. Cal. Jan. 26, 2009) (quoting *Caldwell v. Montoya*, 10 Cal. 4th 972, 981, 42 Cal. Rptr. 2d 842, 897 P.2d 1320 (1995)). "[A] workable definition of immune discretionary acts draws the line between planning and operational functions of government." *Caldwell*, 10 Cal. 4th at 981 (citation and quotation marks omitted). "[I]mmunity applies only to *deliberate and considered* policy decisions, in which a conscious balancing of risks and advantages took place." *Id*. (cleaned up).

Discretionary immunity [typically] does not apply to decisions to arrest, investigate, or other operational decisions by police officers purporting to apply the law. *Sharp v. Cnty. of Orange*, 871 F.3d 901, 920 (9th Cir. 2017) (citing *Liberal v. Estrada*, 632 F.3d 1064,1084-85 (9th Cir. 2011); *Valenzuela v. San Diego Police Dep't*, 2020 WL 804923, at *5 (S.D. Cal. Feb. 18, 2020); *Gillan v. City of San Marino*, 147 Cal. App. 4th

1033, 55 Cal. Rptr. 3d 158 (2007) (abrogated on other grounds by *Leon v. Cnty. of Riverside*, 14 Cal. 5th 910, 923, 309 Cal. Rptr. 3d 682, 530 P. 3d 1093 (2023)). Nevertheless, courts have found that, in certain fact-specific situations, officers may be entitled to discretionary immunity. *See So v. Bay Area Rapid Transit*, 2013 WL 5663207, at *7 (N.D. Cal. Oct. 17, 2013); *see also Sanchez v. City of San Diego*, 2023 WL 4098104, at *7 (Cal. Ct. App. Jun. 21, 2023) (unpublished) ("[T]he line between discretionary policy decisions and non-immune ministerial or operational decisions is often blurry and difficult to discern."). Courts have found discretionary immunity applied in certain instances, including: "(1) the decision to pursue a fleeing car; (2) the decision to investigate or not investigate a vehicle accident; (3) the failure to make an arrest or to take some protective action less drastic than arrest; (4) the decision whether to use official authority to resolve a dispute; and (5) the decision whether to remove a stranded vehicle." *Conway v. Cnty. of Tuolumne*, 231 Cal. App. 4th 1005, 1015, 180 Cal. Rptr. 3d 598 (2014) (cleaned up). But courts have also found that discretionary immunity did not apply in the following circumstances: (1) an officer's conduct during an accident investigation after he made the discretionary decision to undertake the investigation; (2) arresting the wrong person while executing a warrant; (3) deciding to arrest an individual when there was no probable cause; and (4) using unreasonable force when making an arrest. *Id.*

 The court cannot conclude from the allegations in the Complaint that defendants were engaged in a policy decision when they threatened plaintiff with arrest. As such, at this stage, defendants are not entitled to discretionary immunity.

 Accordingly, the court finds defendants are entitled to qualified immunity from the § 1983 claim for violation of plaintiff's First Amendment freedom of speech, but denies defendants' motion for judgment on the pleadings as to the liberty of speech claim under the California Constitution.

**C.**    **Freedom of Movement or Viewpoint Discrimination (Claim Six)**

    **1.**    **Freedom of Movement**

In Claim Six, plaintiff also alleges defendants violated her freedom of movement under the Fourteenth Amendment.  But other than plaintiff reciting the Complaint's allegations, neither party addresses this alleged violation.

The freedom of movement is a liberty interest protected by the Fourteenth Amendment.  *See Perez-Morciglio v. Las Vegas Metropolitan Police Dep't*, 820 F. Supp. 2d 1111, 1126 (D. Nev. 2011).  A § 1983 claim based on a violation of the freedom of movement must be dismissed against Kim.  The Complaint contains no allegations that Kim threatened plaintiff with arrest if she entered the alleyway.  As for Cruz, plaintiff alleges Cruz threatened her with arrest if she entered the alleyway and that threat caused her not to "protest in a public forum of her choosing" and "move about freely in a public place."  Complaint ¶ 24.  But plaintiff does not actually allege she did not enter the alleyway because of the threat.  *See* Complaint ¶ 13.

As such, plaintiff fails to state a §1983 claim based on a Fourteenth Amendment violation.

    **2.**    **Viewpoint Discrimination**

In Claim Six, plaintiff also alleges individual defendants violated her First Amendment rights when they engaged in viewpoint discrimination by allowing the event to blare loud music while ordering her not to use amplified sound under threat of arrest. Again, other than a mere recitation of the allegations by plaintiff, neither party discusses this part of Claim Six.

Viewpoint discrimination is an egregious form of content discrimination. *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829, 115 S. Ct. 2510, 132 L. Ed. 2d 700 (1995).  "Viewpoint discrimination occurs when the government prohibits speech by particular speakers, thereby suppressing a particular view about a subject." *Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) (internal quotation marks and citation omitted).  "To state a viewpoint discrimination claim, a

1  plaintiff must allege facts showing the government restricted speech because of the

2  plaintiff's ideology, opinion, or perspective, and must identify a similarly situated group.

3  *See Rosenberger*, 515 U.S. at 829; *Moss*, 572 F.3d at 970-71.  To prevail in a viewpoint

4  discrimination claim, a plaintiff must establish that the government took action against it

5  '*because of* not merely in spite of' its message."  *Hightower v. City and Cnty. of San*

6  *Francisco*, 77 F. Supp. 3d 867, 883 (N.D. Cal. 2014) (quoting *Moss*, 572 F.3d at 970).

7        Plaintiff fails to state a First Amendment violation based on viewpoint

8  discrimination.  Although plaintiff alleges defendants ordered her and other protestors not

9  to used amplified sound but allowed the event organizer to "blare loud music," such

10  allegations are insufficient.  First, plaintiff fails to identify a similarly situated group –

11  i.e., other demonstrators – whom defendants permitted to use sound amplifying devices.

12  Plaintiff does not allege the event organizer was similarly situated.  Instead, plaintiff

13  alleges the other protestors were similarly situated, and defendants ordered her and the

14  other protestors not to use amplified sound.  *See* Complaint ¶¶ 11, 13-14, 50.  Even if the

15  Complaint sufficiently alleged the event organizers were a similarly situated group,

16  plaintiff fails to allege defendants ordered her not to use amplified sound because of her

17  ideology.  *Cuviello v. City and Cnty. of San Francisco*, 940 F. Supp. 2d 1071, 1085 (N.D.

18  Cal. 2013) (a plaintiff must establish that the government took action because of the

19  message).

20        Accordingly, plaintiff fails to state a First Amendment violation based on

21  viewpoint discrimination.

22  **D.    <u>Other Violations of the California Constitution (Claim Five)</u>**

23        In Claim Five, plaintiff hints at violations of due process and equal protection.  But

24  the Complaint contains no factual allegations of either, and neither party addressed the

25  suggested violations except to note them.  The court therefore finds plaintiff fails to state

26  a violation of due process or equal protection under the California Constitution.

27

28

1    **E.    Bane Act (Claim One)**

2        In Claim One, plaintiff alleges a violation of the Bane Act.  As just discussed,

3    plaintiff contends she had a right to use amplified sound and protest in the alley behind a

4    strip mall, and defendants' threat to arrest her was made for the purpose of depriving her

5    of her rights to freedom of speech, assembly, and movement under the U.S. and

6    California Constitutions.  As to Claim One specifically, defendants argue the threat of an

7    arrest by itself is insufficient to establish a Bane Act violation.  Mtn. at 12-13.

8        Enacted to address hate crimes, the Bane Act provides a claim for relief against

9    "conduct aimed at interfering with rights that are secured by federal or state law, where

10    the interference is carried out 'by threats, intimidation or coercion.'" *Reese v. Cnty. of*

11    *Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (citation omitted); *see* Cal. Civ. Code

12    § 52.1.  As used in the Bane Act, "interfere" means "violate."  *Austin B. v. Escondido*

13    *Union Sch. Dist.*, 149 Cal. App. 4th 860, 883, 57 Cal. Rptr. 3d 454 (2007).  "The essence

14    of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats,

15    intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or

16    she had the right to do under the law or to force the plaintiff to do something that he or

17    she was not required to do under the law."  *Id.*  Claims brought under the Bane Act "may

18    be brought against public officials who are alleged to have interfered with protected

19    rights."  *Reese*, 888 F.3d at 1040.

20        As discussed above, the court finds plaintiff sufficiently alleges a claim that her

21    right to liberty of speech under the California Constitution was violated.  The question

22    here is whether defendants' threat of arrest is sufficient to state a Bane Act claim.  *See id.*

23    (the Bane Act does not require a showing of a threat, intimidation or coercion

24    independent of the constitutional violation).  In most cases, speech alone is not sufficient

25    to support a Bane Act claim, unless the speech threatens violence.  Cal. Civ. Code

26    § 51.2(k); *see Gonzalez v. City of Modest-Modesto Police Dep't*, 2022 WL 463242, at *4

27    (E.D. Cal. Feb. 15, 2022).  "California courts remain undecided on whether a Bane Act

28    claim requires a threat of violence or whether intimidation or coercion involving a

nonviolent consequence would suffice." *Black Lives Matter-Stockton Chapter v. San Joaquin Cnty. Sheriff's Off.*, 398 F. Supp. 3d 660, 680 (E.D. Cal. 2019).  Federal courts, however, "have found that a threat of arrest can constitute coercion even without a threat of violence." *Gonzalez*, 2022 WL 463242, at *4; *Adjaye v. White*, 2021 WL 4353101, at *8 (C.D. Cal. Jul. 1, 2021); *Black Lives Matter*, 398 F. Supp. 3d at 680.  "[T]he particular coercive power of law enforcement officers has led courts to impose liability when detention, rather than violence, is threatened" because the "threat of detention or arrest is included in the plain meaning of 'coercion.'"  *Cuviello*, 2009 WL 9156144, at *17.

As particularly relevant here, some district courts have found that the threat of arrest may be sufficient to establish the threat, coercion, or intimidation requirement of a Bane Act claim "where the threat interferes with a First Amendment right."  *Gonzalez*, 2022 WL 463242, at *4 (citing *Cuviello*, 940 F. Supp. 2d at 1103).  Thus, plaintiff's allegations that defendants threatened to arrest her if she used amplified sound, and that she indeed stopped using amplified sound because of the threat, are sufficient to state a Bane Act violation.  *See Cuviello*, 944 F.3d at 825 ("The United States Constitution and California Constitution protect bullhorns, and other sound-amplifying devices, as "indispensable instruments" of public speech.").

Although plaintiff also alleges a Bane Act violation with regard to a violation of her freedom of movement, as discussed above, plaintiff fails to state a violation of her freedom of movement claim.  *See Williamson v. City of Nat'l City*, 23 F.4th 1146, 1155 (9th Cir. 2022) ("California's Bane Act requires proof of an underlying constitutional violation").  Thus, plaintiff fails to state a Bane Act claim with respect to freedom of movement.

As such, plaintiff's Bane Act claim is sufficiently pled to survive a motion for judgment on the pleadings with regard to defendants' interference with her right of speech.

**F.    Ralph Act (Claim Two)**

In Claim Two, plaintiff alleges a violation of the Ralph Act.  Plaintiff alleges defendants threatened unlawful violence – the threat of false arrest without probable cause – against her due to her identification as animal rights activist "who was opposed to the animal killing event."

The Ralph Act guarantees all persons within California "the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of any characteristic listed or defined in subdivision (b) or (e) of Section 51." Cal. Civ. Code § 51.7(b)(1).  To state a claim under the Ralph Act, a plaintiff must show: (1) the defendant committed or threatened violent acts against plaintiff; (2) defendant was motivated by his or her perception of plaintiff's political affiliation; (3) plaintiff was harmed; and (4) defendant's conduct was a substantial factor in causing the plaintiff harm.  *Campbell v. Feld Enter., Inc.*, 75 F. Supp. 3d 1193, 1205 (N.D. Cal. 2014).

Here, the Complaint lacks any allegations that defendants committed any violent acts or intimidated her by threat of violence.  Unlike the Bane Act, the Ralph Act expressly requires that a plaintiff allege violence or intimidation by threat of violence, and the threat of arrest alone does not necessarily involve either.  *Moreno v. Town of Los Gatos*, 267 F. App'x 665, 666-67 (9th Cir. 2008) (the Bane Act and Ralph Act are separate and independent); *see also Animal Prot. and Rescue League, Inc. v. City of Los Angeles*, 2021 WL 5879274, at *6 (Cal. Ct. App. Dec. 13, 2021) (unpublished) ("the threat of arrest, without more, is insufficient to qualify as a 'threat of violence'" under the Ralph Act).  "The plain meaning of the word violence clearly involves some physical, destructive act." *Campbell*, 75 F. Supp. 3d at 1205 (N.D. Cal. 2014) (cleaned up and citation omitted).  Accordingly, the claim is dismissed without leave to amend.

**G.    Abuse of Elder Person (Claim Three)**

In Claim Three, plaintiff alleges she is entitled to attorney's fees under California Welfare and Institutions Code § 15657 because she is a person over the age of 65 and

defendants inflicted "physical abuse" on her.  Specifically, plaintiff alleges the threat of arrest is an assault, which constitutes physical abuse under Welfare and Institutions Code § 15610.63.

"The Elder Abuse Act makes certain enhanced remedies available to a plaintiff who proves abuse of an elder." *Carter v. Prime Healthcare Paradise Valley LLC*, 198 Cal. App. 4th 396, 404 129 Cal. Rptr. 3d 895 (2011).  The Act "requires a plaintiff to prove by clear and convincing evidence that a defendant is liable for physical abuse, neglect, or financial abuse . . . and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of such abuse." *Thompson v. U.S.*, 2023 WL 3955355, at *3 (E.D. Cal. Jun. 12, 2023) (quoting *Covenant Care, Inc. v. Superior Ct.*, 32 Cal. 4th 771, 779, 11 Cal. Rptr. 3d 222, 86 P.3d 290 (2004)) (quotation marks omitted).

The facts in this case do not meet any definition of physical abuse under § 15610.63.  Among what constitutes physical abuse under § 15610.63 is assault as defined in California Penal Code § 240.  *See* Cal. Welf. & Inst. Code § 15610.63(a).  Section 240 of the Penal Code defines assault as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another."  Cal. Penal Code § 240.  As discussed above, the threat of arrest does not involve violence and therefore is neither an assault under Penal Code § 240 nor physical abuse under Welfare and Institutions Code § 15610.63.

As such, Claim Three is dismissed without leave to amend.

**H.    <u>Waste of Public Funds (Claim Four)</u>**

In Claim Four, plaintiff alleges it is an illegal expenditure and waste of public of funds for LA Sanitation to send out special trucks to pick up and dispose of hundreds of chicken carcasses from this event, which in itself is an illegal event, every year.  Plaintiff further alleges it is also an illegal expenditure and waste of public funds for the City of Los Angeles to pay police officers overtime to attend this event.

Section 526a of the California Code of Civil Procedure provides, in relevant part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a local agency, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax that funds the defendant local agency." Cal. Civ. Proc. § 526a(a). Cases have found that "illegal expenditure" under the statute concerns government conduct that is unconstitutional or otherwise illegal. *Mohler v. Cnty. of Santa Clara*, 92 Cal. App. 5th 418, 424, 309 Cal. Rptr. 3d 245 (2023); *Lyons v. Santa Barbara Cnty. Sheriff's Off.*, 231 Cal. App. 4th 1499, 1503, 181 Cal. Rptr. 3d 186 (2014) ("A taxpayer action does not lie where the challenged governmental conduct is legal."). But the prohibition against waste "is not well defined in either the statute or the case law." *Mohler*, 92 Cal. App. 5th at 424. Waste "does not apply to the vast majority of discretionary decisions made by state and local units of government," but instead "applies to expenditures that provide no public benefit, are totally unnecessary, useless, or impose significant additional cost without any additional public benefit." *Id*. at 425 (cleaned up). "This restrictive interpretation of waste is compelled by separation of powers considerations." *Id*. Because making appropriations is one of the core functions of the legislative branch, the California Supreme Court "has admonished courts to 'not interfere with [a] County's legislative judgment on the ground that the County's funds could be spent more efficiently.'" *Id*. (quoting *Sundance v. Municipal Ct.*, 42 Cal. 3d 1101, 1139, 232 Cal. Rptr. 814, 729 P.2d 80 (1986)).

As an initial matter, plaintiff has not alleged taxpayer standing to bring this claim. "[A] plaintiff alleging taxpayer standing under § 526a must plead that it has been assessed and paid a tax within the past year." *Calop Bus. Syst., Inc., v. City of Los Angeles*, 984 F. Supp. 2d, 981, 1013 (C.D. Cal. 2013). Section 526a does not require the payment of a property tax; instead, "it is sufficient for a plaintiff to allege she or he has paid, or is liable to pay, to the defendant locality a tax assessed on the plaintiff by the

defendant locality." *Weatherford v. City of San Rafael*, 2 Cal. 5th 1241, 1252, 218 Cal. Rptr. 3d 394, 395 P.3d 274 (2017). Plaintiff alleges she is a resident of Los Angeles County, but she neither alleges that she is a resident of the city of Los Angeles nor that she has been assessed or paid a tax in the city of Los Angeles within the past year.

Assuming plaintiff can plead taxpayer standing, plaintiff still fails to state a claim. First, the government conduct must be unlawful in order to constitute an illegal expenditure under § 526a. *See Mohler*, 92 Cal. App. 5th at 424. Plaintiff does not allege facts establishing that either the use of sanitation trucks to pick up chicken carcasses or the payment of overtime to police officers is illegal government conduct. To the extent plaintiff alleges the City's expenditures are illegal because the event is illegal, that is the incorrect standard. Moreover, plaintiff's conclusory allegation that the event is illegal does not make it so. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences"). Second, plaintiff also fails to allege a § 526a claim due to waste. Plaintiff does not allege that the expenditures provide no public benefit, are totally unnecessary or useless, or impose significant additional cost without any additional public benefit. And given the plain benefit to public health of removing chicken carcasses, as well as the role played by police officers in maintaining order at public religious events attracting protestors, plaintiff cannot allege facts showing these expenditures amounted to waste.

The California Code of Civil Procedure § 526a claim therefore is dismissed without leave to amend.

## I.    **Declaratory Relief (Claim Seven)**

In Claim Seven, plaintiff seek declaratory relief that she may use amplified sound in a public forum. Because some state law claims remain, the court denies defendants' motion to dismiss this claim. *See Granny Purps, Inc. v. Cnty. of Santa Cruz*, 53 Cal. App. 5th 1, 9, 266 Cal. Rptr. 3d 752, 758 (2020) ("declaratory relief is a cause of action, one that can be maintained as long there is an existing legal controversy alleged").

**J.    Supplemental Jurisdiction**

As explained above, the court is granting defendants' motion as to Claims Two, Three, Four, and Six, plus portions of Claims One and Five.  This leaves just two substantive claims, what remains of Claims One and Five, both of which are state law claims.  Plaintiff's sole federal law claim, over which this court had original jurisdiction, was Claim Six.  *See* 28 U.S.C. § 1331.

At the time defendants removed this action to this court, the Complaint's § 1983 claim in Claim Six allowed this court to exercise supplemental jurisdiction over the state law claims.  28 U.S.C. § 1367(a).  But the court may decline to exercise supplemental jurisdiction over state law claims where, as here now, it "has dismissed all claims over which it has original jurisdiction."  28 U.S.C. § 1367(c)(3).  And indeed, in her opposition, plaintiff suggests that if the court finds the individual defendants have qualified immunity on the § 1983 claim, the court should decline to exercise supplemental jurisdiction and remand the case to state court.  Opp. at 12.

 The court does not here decide whether to exercise supplement jurisdiction over plaintiff's remaining state law claims.  By separate minute order, the court is ordering the parties to participate in a settlement conference or mediation to see if the case can be resolved.  If the case does not settle, the court will hold a status conference at which the issue of supplemental jurisdiction, among others, will be discussed.

## V.

## ORDER

IT IS THEREFORE ORDERED that defendants' motion for judgment on the pleadings (docket no. 22) is granted in part and denied in part.  Claims Two, Three, Four, and Six, plus portions of Claims One and Five, are dismissed as specified above.

DATED: September 17, 2024

_____
SHERI PYM
United States Magistrate Judge